IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALICIA R. CANNON,

       *Plaintiff,*

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security

       *Defendant.*

CIVIL ACTION
NO. 15-1530

PAPPERT, J.                                                                    April 13, 2016

## MEMORANDUM

      Alicia R. Cannon ("Cannon") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the decision of Carolyn W. Colvin ("Commissioner")—acting Commissioner of the Social Security Administration—denying Cannon's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the administrative record, Magistrate Judge Jacob P. Hart's Report and Recommendation ("R & R"), and Cannon's Objections thereto, the Court approves the R & R, denies Cannon's request for review and affirms the Commissioner's decision.

### I.

      Cannon was born on March 9, 1972.[1] (Administrative Record ("R.") at 209.)[2] Cannon is currently unemployed, but has previously worked in home health services, as a maid, a stocker in a retail store and a telephone operator. (R. at 235.) On December 30, 2011, Cannon filed applications for DIB and SSI, alleging that she has been disabled since August 7, 2011 as a result of depression, arthritis and a herniated disc in her back. (R. at 209, 219, 234.) Cannon's

---

[1]     Because Cannon does not object to Judge Hart's factual and procedural recitations, the Court draws its factual and procedural history largely from those portions of the R & R.

[2]     The Court uses "R." when referring to pages of the Administrative Record. (*See* ECF No. 6.)

applications were denied on May 25, 2012, and she thereafter requested a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 134, 138, 143.)  The ALJ held a hearing on Cannon's applications on June 18, 2013, and denied relief on July 25, 2013.  (R. at 19, 38.)  The ALJ's decision became final after the Appeals Council denied Cannon's request for review on February 3, 2015.  (R. at 1.)

Cannon subsequently filed this action on April 1, 2015, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  (ECF No. 3.)  On September 9, 2015, Judge Hart entered an R & R recommending that Cannon's request for review be denied and judgment be entered in favor of the Commissioner.  (ECF No. 13.)  Cannon filed Objections on September 18, 2015 (ECF No. 14) and the Commissioner responded on October 2, 2015.  (ECF No. 16.)  Cannon filed her reply brief on October 9, 2015.  (ECF No. 17.)

**II.**

The Court reviews *de novo* those portions of the R & R to which Cannon has objected. 28 U.S.C. § 636(b)(1); *see also Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998).  Pursuant to Section 636(b)(1), the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  In reviewing the ALJ's decision, the Court is not permitted to weigh the evidence or substitute its own conclusions for those reached by the ALJ.  *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002); *Lopez v. Colvin*, No. 13-6923, 2016 WL 1238772, at *1 (E.D. Pa. Mar. 30, 2016).  Rather, the Court reviews the ALJ's findings to determine whether they were supported by substantial evidence.  42 U.S.C. § 405(g); *see also Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

Substantial evidence is evidence which a "reasonable mind might accept as adequate to support a conclusion." *Rutherford*, 399 F.3d at 552 (internal quotation marks omitted). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Id*. (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). "If the ALJ's decision is supported by substantial evidence, the Court may not set it aside 'even if [the Court] would have decided the factual inquiry differently.'" *Lopez*, 2016 WL 1238772, at *2 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). The ALJ's decision "must therefore present a sufficient explanation of the final determination in order to provide the reviewing court with the benefit of the factual basis underlying the ultimate disability finding." *D'angelo v. Colvin*, No. 14-6594, 2016 WL 930690, at *1 (E.D. Pa. Mar. 11, 2016) (citing *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981)). The decision need only discuss the most relevant evidence concerning a claimant's disability, "but it must provide sufficient discussion to allow the reviewing Court to determine whether its rejection of potentially significant evidence was proper." *Id*. (citing *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203–04 (3d Cir. 2008)).

### III.

In order to receive benefits under the Social Security Act, a person must be "disabled" within the meaning of the statute and accompanying regulations. To establish a disability, Cannon must show that there is some "medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38–39 (3d Cir. 2001) (internal quotation marks omitted). Cannon may establish that she is disabled by either: (1) producing medical evidence that she is *per se* disabled under the listed impairments set forth in 20 C.F.R. pt. 404, Subpt. P, App. 1, or (2) establishing an impairment of such severity as to render her unable to engage in

any kind of substantial gainful work that exists in the national economy. *See D'angelo*, 2016 WL 930690, at *2 (citing *Heckler v. Campbell*, 461 U.S. 458, 460 (1983)); 42 U.S.C. § 423(d)(2)(A).

The Social Security Act's regulations outline a five-step sequential evaluation process to determine whether Cannon is disabled. 20 C.F.R. § 404.1520. At step one, the ALJ will find that Cannon is not disabled unless she demonstrates that she is not engaged in "substantial gainful activity." *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)). At step two, the ALJ will find no disability unless Cannon shows that she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." *Id*. (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).

If Cannon successfully demonstrates a "severe impairment," the ALJ determines at step three whether the impairment is one of the listed impairments severe enough to render one *per se* disabled; if so, Cannon qualifies. *Id*. at 550–51 (citing 20 C.F.R. pt. 404, Subpt. P, App. 1). If, however, Cannon's impairment is not listed, the inquiry proceeds to step four and the ALJ determines whether Cannon has the "residual functional capacity" ("RFC") to perform any prior relevant work. *Id*. at 551. If she can perform any prior relevant work, Cannon will not be found disabled. *Id*. If Cannon survives step four, the fifth step requires the ALJ to consider "vocational factors" (age, education and past work experience) to determine whether Cannon is capable of performing other jobs existing in the national economy. *Id*. (citing 20 C.F.R. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c)). "The ALJ resolves conflicts in the evidence, determines the evidence's credibility, and assigns the appropriate weight to be given such evidence."

*D'angelo*, 2016 WL 930690, at *2 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 2004)).

Applying the five-step evaluation, the ALJ determined that Cannon was not "disabled" as defined by the Social Security Act. (R. at 29–30.) At step one, the ALJ found that Cannon has not engaged in substantial gainful activity since the alleged onset of her disability. (R. at 22.) At step two, the ALJ found that Cannon suffers from the following severe impairments: degenerative disc disease, arthritis, obesity and a major depressive disorder. (*Id*.) At step three, the ALJ found that Cannon's impairments, either individually or collectively, did not meet the severity of one of the listed impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1. (*Id*.) At step four, the ALJ found that Cannon:

> [R]etains the residual functional capacity to perform the exertional demands of light level work, or work which requires maximum lifting of twenty pounds and frequent lifting of ten pounds; she can sit up to six hours and stand and walk for up to six hours, in an eight hour workday (20 C.F.R. [§§] 404.1567 and 416.967). She can never climb, bend, or crouch, but can occasionally balance, stoop, and kneel. She must avoid concentrated exposure to irritants such as dust, fumes, odors, gas, chemicals, and poorly ventilated areas. She is limited to simple work, as defined in the *Dictionary of Occupational Titles* as SVP levels 1 and 2, with routine and repetitive tasks. She is limited to low stress jobs defined as requiring only occasional decision making and occasional changes in the work setting, and with occasional interaction with the general public, co-workers or supervisors.

(R. at 26.) Given this RFC, the ALJ concluded that Cannon could not perform her past relevant work. (R. at 28.) At step five, however, the ALJ found that Cannon's residual functional capacity permits her to work jobs that exist in significant numbers in the national economy. (R. at 29.) Specifically, the ALJ found that Cannon could work as an office helper, inspector, sorter or assembler. (*Id*.) The ALJ thus found that Cannon was not disabled within the meaning of the statute and therefore not entitled to benefits. (R. at 29–30.)

IV.

In her brief requesting review, Cannon argued that the ALJ erroneously: (1) discredited the opinions of Cannon's treating and examining providers while crediting those of non-examining consultants; (2) considered the impact of Cannon's obesity on her ability to function; (3) found that that there was "no actual evidence of any significant deficits" in the area of concentration, persistence and pace; and (4) considered whether Cannon was suffering from mental retardation and/or personality disorder. (*See generally* Pl.'s Mot. Summ. J. ("Pl.'s Mot."), ECF No. 9.) Judge Hart rejected Cannon's first two arguments and agreed with the ALJ's findings. Judge Hart found merit in Cannon's final two arguments, but ultimately found the ALJ's errors to be harmless. Cannon objects to Judge Hart's conclusions. The Court considers each objection in turn.

A.

Cannon first objects to the portion of the R & R finding that the ALJ's decision to discredit the opinions of Cannon's treating and examining physicians, Conrada Ola, MD ("Dr. Ola"), Carl Herman, MD ("Dr. Herman"), Judy Teter ("Teter") and David Knox, MD ("Dr. Knox"), while crediting those of non-examining consultants Ira Gensemer, Ed.D. ("Dr. Gensemer") and Louis Bonita, MD ("Dr. Bonita"), was supported by substantial evidence. (Pl.'s Objs. to R. & R. ("Pl.'s Objs.") at 1, ECF No. 14.) The Court first addresses those physicians who opined on Cannon's mental limitations: Dr. Ola, Dr. Herman, Teter and Dr. Gensemer.

i.

Dr. Ola was Cannon's treating psychiatrist. (R. at 419.) Generally, the opinions of treating physicians are given more weight than the opinions of other medical professionals. 20 C.F.R. § 404.1527(c)(2). If a treating physician's opinion "is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," it is afforded controlling weight. *Id*. If the opinion does not meet this standard, it will not receive controlling weight and the ALJ will determine how much weight the opinion should be given. *Id*. In doing so, the ALJ considers a number of factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the opinion; (4) the consistency with the remainder of the record; and (5) whether the medical issues in question are related to the physician's area of specialty. 20 C.F.R. § 404.1527(c)(2)–(5).

Dr. Ola conducted an RFC assessment of Cannon on June 13, 2013. (R. at 419.) Dr. Ola indicated that Cannon had, in relevant part: (1) "marked" difficulties in maintaining social functioning; and (2) "marked" difficulties in maintaining concentration, persistence and pace. (R. at 429.) Dr. Ola's findings were included in a fourteen-page report consisting of a series of checkboxes which Dr. Ola filled out. (*Id*.)

When rating the degree of limitation in the areas of social functioning and concentration, persistence or pace, the following scale is used: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). "Social functioning" refers to an individual's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. pt. 404, Subpt. P, App. 1. It also includes "the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *Id*. Whether an individual has "marked" limitations in this area is determined not "by a specific number of different behaviors in which social functioning is impaired, but by the nature and overall degree of interference with function." *Id*.

"Concentration, persistence, or pace" refers to an individual's "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id*. A "marked" limitation in this area is also not defined "by a specific number of tasks that you are unable to complete, but by the nature and overall degree of interference with function." *Id*. For example:

> [I]f you can complete many simple tasks, we may nevertheless find that you have a marked limitation in concentration, persistence, or pace if you cannot complete these tasks without extra supervision or assistance, or in accordance with quality and accuracy standards, or at a consistent pace without an unreasonable number and length of rest periods, or without undue interruptions or distractions.

*Id*.

In discounting Dr. Ola's "marked" findings, the ALJ acknowledged that a treating physician's opinion is entitled to deference, and in certain circumstances, controlling weight. (R. at 24.) The ALJ noted, however, that controlling weight will only be afforded where the opinion is supported by "objective medical evidence and consistent with other substantial evidence of record." (*Id*.) The ALJ found that Dr. Ola's RFC failed to provide any rationale for her "marked" findings, and that those findings were inconsistent with other treatment notes in the record. (*Id*.) Specifically, the ALJ observed that Dr. Ola's last treatment note for Cannon from April 10, 2013—just two months before Dr. Ola's RFC—provided that Cannon "denied major problems" and was "stable." (*Id*. (citing R. at 391).) In discrediting Dr. Ola's findings, the ALJ reasoned that "a check off form with no narrative report is considered weak evidence, at best," (*id*. (citing *Mason*, 994 F.2d at 1065)), and that the reliability of such forms unaccompanied by written reports is suspect. (*Id*. (citing *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986).) The ALJ ultimately afforded "little weight" to Dr. Ola's opinion.

In her analysis, the ALJ considered Dr. Ola's opinions relative to other treatment notes in the record. (R. at 22–25.) For example, while Teter's notes reflect that Cannon suffered from depression and a tendency to isolate herself, she also observed that Cannon "ha[d] been more active and getting out of the house more, but then hibernate[d] if it [was] too much." (R. at 392.) Teter noted that Cannon had an enjoyable birthday, took her children to the movies and was working toward obtaining her driver's license. (*Id*.) Cannon did, however, express feeling depressed about her ex-boyfriend and told Teter she had not left the house since Sunday. (*Id*.) Teter thereafter warned Cannon that "staying in the house ruminating makes it more difficult to let go." (*Id*.)

Other treatment notes from 2012 and 2013 show that Cannon attended Bible study, joined the usher club at church and shared enjoyable interactions with children and other family members. (R. at 393, 395–96, 407, 411.) For example, Cannon cooked all day for her son's birthday, took her children to dance classes and went to her daughter's housewarming party. (R. at 393, 395, 397.) Cannon was, however, having difficulties getting out of bed and leaving the house. (*Id*.) Teter noted that Cannon's "fear prohibits her from leaving her house, which contributes to her depressed mood." (R. at 396.)

As the ALJ noted, Cannon's treatment notes reflect difficulties in both the areas of social functioning and concentration, persistence and pace. (R. at 24–26.) The treatment notes also reflect, however, that Cannon engaged in church activities, shared enjoyable interactions with friends and family and was "more active and getting out of the house more." (R. at 392–93, 395–96, 407, 411.) Moreover, Cannon's final treatment note from Dr. Ola stated that Cannon "denied major problems" and was "stable." (R. at 391.) For these reasons, the Court agrees with Judge Hart that the ALJ's decision to discredit Dr. Ola's opinion of "marked" limitations in those

areas was supported by substantial evidence. *See, e.g.*, *Serody v. Chater*, 901 F. Supp. 925, 929 (E.D. Pa. 1995) (holding an ALJ may reject treating physician's opinion on basis of contradictory medical evidence).

Despite the ALJ's findings, Cannon contends that her medication changes support "marked" findings in the areas of social functioning and concentration, persistence and pace. (Pl.'s Objs. at 7.) Specifically, Cannon contends that the changes in her medication over the course of two years show that her symptoms could not effectively be controlled by medication. (*Id*. at 8; *see also* R. at 306, 377, 380, 399.) In 2011, Cannon scored a 55 on her Global Assessment Functioning test—a score which falls in the middle of the "moderate" impairment range (50–60) for social or occupational functioning. (R. at 306.) As Judge Hart indicated, the type, dosage and effectiveness of medication is to be considered when evaluating Cannon's subjective symptoms. (R & R at 6 (citing 20 C.F.R. §§ 404.1527(c)(3)(iv), 416.929(c)(3)(iv).) Those adjustments, however, without any supporting explanation from Dr. Ola, do not justify setting aside the ALJ's decision.

Dr. Herman also evaluated Cannon and found that she had "marked" or "extreme" limitations in nine out of ten areas. (R. at 340.) He noted that Cannon was extremely limited in her ability to understand, remember or carry out detailed instructions, as well as her ability to interact appropriately with the public. (*Id*.) Dr. Herman stated his clinical support for these diagnoses as: "severe depression, social withdrawal, hypervigilant, preoccupied and multiple losses and traumatic events." (*Id*.) Dr. Herman had no prior involvement treating Cannon and only evaluated her once. (R. at 337–43.)

The ALJ discounted Dr. Herman's findings because they, like Dr. Ola's, were "not consistent with the evidence as a whole." (R. at 24.) Specifically, the ALJ noted that Dr.

Herman's findings contradict his own notes as well as the notes of Dr. Ola and Teter.  (*Id*.)  For example, Dr. Herman described Cannon as severely depressed, yet also fully cooperative, pleasant, accurately oriented and in contact with her environment.  (R. at 337–38.)  He also observed that her thinking was "pre-occupied [*sic*]," yet "logical, coherent, relevant, with no flight of ideas."  (*Id*.)  The ALJ found that Dr. Herman's findings "essentially adopt[ed] [Cannon's] less than forthcoming report without the professional balance or objectivity one might expect."  (R. at 24.)  Given that Dr. Herman's opinion was "internally inconsistent and unsupported by other credible evidence," the ALJ afforded it very little weight.  (*Id*.)

As discussed *supra*, Cannon's treatment notes are inconsistent with Dr. Herman's "marked" or "extreme" findings in nine out of ten areas.  One month after meeting with Dr. Herman, Cannon became involved with her church, engaged more with her children and maintained an improved mood with a brighter affect.  (R. at 359, 361, 364.)  Dr. Herman also observed that Cannon could manage her own benefits.  (R. at 338.)  As Judge Hart noted, the ability to manage one's own benefits may not always be inconsistent with disabling functional limitations.  (R & R at 9 (citation omitted).)  However, Cannon's treatment notes from Dr. Ola, Teter, and Dr. Herman himself, contradict Dr. Herman's findings of "extreme" limitations in virtually every area.  The ALJ accordingly did not err in affording Dr. Herman's opinion very little weight.  *See, e.g.*, *Williams v. Sullivan*, 970 F.2d 1178, 1187 (3d Cir. 1992) (noting the Commissioner has an obligation to weigh medical evidence and make choices between conflicting accounts); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (holding an unsupported diagnosis is not entitled to significant weight).

The ALJ found as credible the opinions of Dr. Gensemer, a State agency psychological consultant.  (R. at 23.)  Although Dr. Gensemer never personally evaluated Cannon, the ALJ

found that "he provided specific reasons for his opinions about [Cannon's] limitations showing that they were well grounded in the evidence of record." (R. at 24.) Dr. Gensemer found that Cannon "[could] function in production oriented jobs requiring little independent decision making." (R. at 110.) The ALJ accordingly gave considerable weight to Dr. Gensemer's finding of "moderate" limitations in the areas of social functioning and concentration, persistence and pace given that they were consistent with the record as a whole. (R. at 24.)

Cannon contends that Dr. Gensemer's opinion should be afforded less weight because he is a psychologist, not a psychiatrist, and thus cannot prescribe psychotropic medicine. (Pl.'s Objs. at 10.) Cannon argues that because Drs. Ola and Herman could prescribe medicine, and because their opinions were consistent with each other, the ALJ erred in crediting a non-examining psychologist's opinion. (*Id*.) As Judge Hart observed, psychologists and psychiatrists are both mental health specialists and Cannon points to no authority stating that a psychiatrist's opinion is worth more than a psychologist's. (*See generally* Pl.'s Objs.) Moreover, as the ALJ explained, both the opinions of Drs. Ola and Herman were discredited because of their inconsistencies with the entire record. That the two arrived at roughly the same conclusion is of no moment where those conclusions not only lacked comprehensive clinical rationales, but also contradicted other record evidence.

Cannon finally contends that Dr. Gensemer's opinions were unsupported by treatment notes submitted after he issued his report. (Pl.'s Objs. at 10–11.) The ALJ specifically noted, however, that the "later submitted evidence" did not support more than moderate limitations. (R. at 24.) The ALJ's decision to discredit Drs. Ola and Herman while crediting Dr. Gensemer was therefore supported by substantial evidence.

**ii.**

Drs. Knox and Bonita examined Cannon and opined as to the severity of her physical limitations. Dr. Knox examined Cannon on April 16, 2012. (R. at 344.) He found that: Cannon had tenderness and spasms in her lumbar back; her straight leg raising test was positive in both legs, which indicated the existence of herniated discs in her lumbar spine; and she had limited movement in her spine and hips. (R. at 346–51.) Dr. Knox diagnosed Cannon with L4-5 radiculopathy and degenerative joint disease in both hips. (R. at 346.) During the examination, Cannon told Knox that she could stand and sit for 45 minutes at a time. (R. at 344.) She also stated that she could walk for roughly six blocks at a time. (*Id*.) In his findings, however, Dr. Knox indicated that in an eight-hour work day, Cannon could: (1) stand for a total of one hour-per day; (2) walk for a total of one hour-per day; and (3) sit for only one hour-per day. (R. at 348.)

Dr. Bonita also examined Cannon and found, contrary to Dr. Knox's opinion, that Cannon could stand, walk and/or sit for about six hours in an eight-hour workday. (R. at 108.) Dr. Bonita analyzed Dr. Knox's findings and stated that Dr. Knox's "opinion relie[d] heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." (R. at 111.) The ALJ credited Dr. Bonita's analysis:

> Regarding any physical impairments, the record does not show the claimant requiring any current emergency room treatments, hospitalizations, significant active treatment, or significant office care. There is actually no record of any treatment for a physical disorder since her alleged disability onset date.

(R. at 27.) The ALJ also noted that Dr. Knox's opinion was inconsistent with Cannon's testimony at the hearing. (R. at 28.) Specifically, Cannon testified that she was not taking pain medication and reported walking around the mall and then sitting for an entire movie. (R. at 82-3, 84-5.) As referenced above, she also spent an entire day cooking for her son's birthday. (R. at

13

395.) Thus, the ALJ's decision to discredit Dr. Knox's opinion and credit Dr. Bonita's was supported by substantial evidence.

Accordingly, Cannon's objection to that portion of the R & R affirming the ALJ's decision to discredit Cannon's treating and examining physicians while crediting non-examining physicians is overruled.

**B.**

Cannon also objects to the portion of the R & R which found that the ALJ properly considered the limitations caused by Cannon's obesity. (Pl.'s Objs. at 12.) Cannon contends that the ALJ "did not actually explain how . . . Cannon's obesity impacted [her] RFC thus the ALJ failed to provide a meaningful analysis of obesity." (*Id*.) Cannon fails to note, however, that the ALJ specifically provided:

> Although [Obesity] was deleted from 20 CFR Subpart P, Appendix 1, effective October 25, 1999, the undersigned notes that obesity is often associated with other impairments; and that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. At the time of the consultative examination, the claimant weighed more than 300 pounds, with a BMI over 43. When assessing this claim at the other steps of the sequential evaluation process (including when determining the claimant's residual functional capacity), the undersigned has considered any additional and cumulative effects of obesity.

(R. at 22.) In assessing Cannon's RFC, the ALJ stated that "[h]er physical residual functional capacity accommodates her obesity and any occasional back or joint pain, or respiratory symptoms." (R. at 28.) Moreover, the ALJ's RFC provided for a number of postural restrictions designed to accommodate her physical limitations. (R. at 25–26.) The ALJ therefore considered Cannon's obesity as part of the RFC and the Court overrules Cannon's objection.

C.

Cannon also objects to the portions of the R & R finding two harmless errors made by the ALJ: (1) that there was "no actual evidence of any significant deficits" in the area of concentration, persistence and pace; and (2) considering whether Cannon was suffering from mental retardation or personality disorder. (Pl.'s Objs. at 4, 8.)

Cannon correctly points out that her treatment notes do contain evidence of deficits in the area of concentration, persistence and pace. For example, Dr. Ola found that Cannon had fair concentration and impaired short-term memory. (R. at 305.) Teter observed that Cannon complained of poor memory and distractibility. (R. at 328.) Dr. Herman found that Cannon had poor short-term memory and immediate retention. (R. at 338.) Despite the ALJ's note stating there was "no actual evidence of any significant deficits," she still found that Cannon suffered from "moderate impairment" in that area:

> The . . . area of . . . "concentration, persistence and pace," refers to the ability to sustain focused attention sufficiently long enough to permit timely completion of tasks commonly associated with a work setting. There is no actual evidence of any significant deficits in this area. However, it is reasonable to find that [Cannon's] depression and her preoccupation with her past relationship would cause some limitations in this area. The undersigned finds that the claimant suffers a moderate impairment in this area of function.

(R. at 25.) The Court agrees with Judge Hart that the ALJ's error is puzzling, particularly in light of the fact that Cannon's depression and preoccupation with her past relationship, among other things, served as the basis for Dr. Ola, Dr. Herman and Teter's findings. In any event, the error was clearly harmless. While Cannon did experience difficulties with memory and retention, she also completed tasks such as cooking, going to bible study, ushering at church, and taking her kids to the mall and dance classes. *See supra* Part IV.A.i. The record also establishes that she watched over a neighbor's child, performed chores and prepared meals. (R. at 395, 407, 409,

412.) The Court agrees with Judge Hart in finding that ALJ's error was harmless and Cannon's objection is accordingly overruled.

Cannon also contends that the R & R improperly designated as a harmless error the ALJ's consideration of "mental retardation" and "personality disorder" as part of Cannon's medical history. (Pl.'s Objs. at 8.) Specifically, the ALJ observed that "[a]lthough 'mental retardation' and a 'personality disorder' are noted in the current treatment notes, there is no definitive diagnosis of either of these psychological disorders." (R. at 22.) As Judge Hart noted, "Personality Disorders and Mental Retardation" was simply a category heading on Dr. Ola's evaluation sheets. (R & R at 5; R. at 391, 394, 399, 405.) Dr. Ola never filled out that category and there is no indication Cannon suffered from either disorder. (R. at 391, 394, 399, 405.)

Cannon summarily states that the ALJ's "error was not harmless because it impacted the ALJ's assessment of Dr. Ola's opinions." (Pl.'s Objs. at 8.) Cannon points to no record evidence establishing that the ALJ's assessment of Dr. Ola's opinions was *actually* influenced by the mistake and to find that it was would require the Court to speculate. Moreover, as Judge Hart noted, the statement Cannon singles out was made by the ALJ at step two of the disability analysis. (R. at 22.) It was therefore was not considered as part of the ALJ's deliberation on what weight to give expert opinions. (*Id*.) Cannon's objection is accordingly overruled.

The Court approves the R & R, denies Cannon's request for review and affirms the Commissioner's decision. An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.